IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GILMAN & BEDIGIAN, LLC      *

            *

            *   Civil Action No. CCB-19-3471

      v.        *

            *

            *

RICHARD SACKETT, *et al.*    *

**MEMORANDUM**

Now pending are the defendants' motion to dismiss the plaintiff's second amended complaint ("SAC") (ECF 36), the plaintiff's motion for jurisdictional discovery (ECF 39), dueling motions for leave to file surreplies (ECF 44; ECF 46), and the plaintiff's motion for leave to file a third amended complaint ("TAC") (ECF 50). The motions have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6. For the reasons stated herein, the motion for leave to amend will be denied, the motion to dismiss will be granted, the motion for jurisdictional discovery will be denied, and the motions for leave to file a surreply will be denied.

**FACTS & PROCEDURAL HISTORY**

This is a dispute between the law firm of Gilman & Bedigian ("G&B") and defendants Richard Sackett ("Sackett"), LawCo USA, P.L.L.C. ("LawCo"), and—should the court grant the motion for leave to file a third amended complaint—Matrix Advertising, LLC ("Matrix"). G&B now being on its proposed third amended complaint, a brief review of the procedural history of the case is warranted.

G&B filed its SAC on May 29, 2020. (ECF 27). In response, the defendants initially moved to strike the SAC or portions thereof. (ECF 28). On September 4, 2020, this court issued an order denying the motion to strike and granting the defendants leave to file a motion to

dismiss the SAC. (ECF 34). The defendants filed their motion to dismiss the SAC, or alternatively to transfer venue, on September 25, 2020. (ECF 36). That motion challenged the sufficiency of the SAC on the basis of subject matter jurisdiction, personal jurisdiction, and for failure to state a claim. Concurrently with its response, G&B filed a motion for limited jurisdictional discovery, seeking leave to inquire into the relationship beteen Sackett and LawCo and Matrix to determine whether it is proper to pierce the corporate veil to establish personal jurisdiction over Sackett. (ECF 39). G&B has filed a motion for leave to file a surreply with respect to the motion to dismiss (ECF 44) and the defendants have filed a motion for leave to file a surreply with respect to the motion for jurisdictional discovery (ECF 46). In its reply in support of its motion to dismiss, the defendants noted that Matrix had filed an action against G&B in Florida state court on October 23, 2020. (ECF 44-2; *see also* ECF 49). Finally, after all of those motions were fully briefed, G&B moved for leave to file its TAC. (ECF 50). These related motions are all now ripe for resolution.

At the heart of the TAC lies a dispute over the ownership and rights associated with several trademarks: the HEAVY HITTERS mark for advertising services (the "Advertising Services" mark) and the HEAVY HITTERS mark for legal services and the THERE'S NO EXCUSE FOR MEDICAL ABUSE legal services mark (the "Legal Services" marks). These marks are used in syndicated advertisements paid for by G&B; the Advertising Services mark is registered to Sackett, and the Legal Services marks are registered to LawCo. All three marks are licensed to Matrix by Sackett and LawCo.

G&B contracted with Matrix for advertising services for the past seven years, though their relationship soured in December 2017. At that time, G&B paid "Matrix and/or Sackett" $463,192 for a media buy which Sackett allegedly used to pay his personal taxes. (TAC at ¶¶ 30–

32). After confronting Sackett about the alleged misappropriation, G&B decided it would pay media outlets directly rather than having Sackett pay on its behalf, and Sackett allegedly agreed to allow G&B to use the Legal Services trademark after termination of their contract because G&B had stuck with him despite the misappropriation of funds. (*Id.* at ¶¶ 34, 37). The parties drew up a written agreement to memorialize their oral agreement, but they disagreed on whether it accurately reflected that agreement. (*Id.* ¶ 37). When G&B ultimately refused to execute the agreement, Sackett threatened to sue for trademark infringement if G&B used the marks without using his advertising services—a threat which was allegedly renewed in 2019. (*Id.* at ¶¶ 38–40).

G&B spent over $7 million on advertising which used the trademarks at issue, such that it believes it created significant goodwill among its client base. (*Id.* at ¶¶ 42–43). G&B was therefore reluctant to lose the marks, but as the relationship continued to deteriorate, G&B notified Sackett it would cease using its advertising services on or before January 1, 2021. (*Id.* at ¶ 17). Thus, it brought suit—originally for a declaratory judgment concerning the parties' rights in the mark—and now, in the proposed TAC, for a declaration that the defendants have abandoned the Legal Services marks and for cancellation of the Advertising Services mark. (*See generally* TAC).[1]

## LEGAL STANDARD

---

[1] Specifically, Count I seeks a declaration that
  (1) LawCo, Matrix as its alleged licensee, and Sackett, each abandoned their rights in the Legal Service Marks;
  (2) G&B has the right to use the Legal Service Marks to advertise its legal services regardless of whether G&B is using, and paying for, the G&B Advertising Services; and
  (3) G&B seeks a declaration that its use of the Legal Service Marks after December 31, 2020 in the Territories will not infringe rights, if any, that Matrix, Sackett and/or LawCo have in the Legal Service Marks.
Count II seeks the "HEAVY HITTERS" Advertising Services mark to be cancelled pursuant to 15 U.S.C. §§ 1064, 1115, and 1119.

"Federal Rule of Civil Procedure 15(a)(2) instructs courts to 'freely give' parties leave to file amended pleadings." *In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). Courts should therefore "liberally allow amendment," *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010), and deny leave to amend only in cases of prejudice, bad faith, or futility, *see In re Triangle Capital*, 988 F.3d at 750 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)); see also *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006). A proposed amendment is futile if is "clearly insufficient or frivolous on its face" or if it "fails to withstand Rule 12(b)(6) scrutiny." *Id.* (internal quotation marks omitted).

Issues of standing are analyzed under the rubric of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480–81 (4th Cir. 2003) (affirming district court's dismissal of complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1)). Plaintiffs bear the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must prove standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Ordinarily, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Pac. Legal Found. v. Goyan*, 664 F.2d 1221, 1223 (4th Cir. 1981). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the

proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). A Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

A challenge based on lack of personal jurisdiction invokes Federal Rule of Civil Procedure 12(b)(2). Personal jurisdiction is ordinarily a question for the judge, "with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). A court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, or it may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need only make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. *Id.* at 276. The court must construe all disputed facts and reasonable inferences in the plaintiff's favor. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). However, a threshold prima facie finding that personal jurisdiction exists does not finally settle the issue; the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence at a pre-trial hearing or at trial. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005).

## DISCUSSION

The court will in turn address the sufficiency of the proposed TAC, the merits of the motion to dismiss the SAC, and then the motion for jurisdictional discovery.

## I.     Sufficiency of the Third Amended Complaint

The defendants oppose the proposed TAC, arguing: (1) the court lacks subject matter jurisdiction over the proposed claims of (I) declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and (II) cancellation of the Advertising Services mark; (2) the court lacks personal jurisdiction over Sackett and LawCo; and (3) G&B has failed to state a claim upon which relief may be granted.

### A.     Subject Matter Jurisdiction

The defendants first argue that the proposed TAC is futile insofar as this court lacks subject matter jurisdiction over the claims asserted therein. Specifically, they contend there is no live case or controversy and the allegations in the complaint are too remote and speculative to satisfy Article III's requirements. The court therefore must first resolve the threshold issue of standing, that "irreducible constitutional minimum." *Lujan*, 504 U.S. at 560. For the reasons explained below, the court agrees that it lacks subject matter jurisdiction over Count II.

To establish Article III standing, a claimant must demonstrate (1) an injury in fact that is actual and imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the defendant's actions; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547–48 (2016); *see also Matherly v. Andrews*, 859 F.3d 264, 277 (4th Cir. 2017). A declaratory judgment action must satisfy the case or controversy requirement of the Constitution by presenting a dispute which is "definite and concrete," "real and substantial," and "touching the legal relations of parties having adverse legal interests[.]" *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007) (internal quotation marks omitted). Because the difference between an abstract question and an actual case or controversy

6

is one of degree, the question in each case is "'whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"

*Id.* at 127 (quoting *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Federal Circuit has articulated a two-part test for determining whether a dispute over

the scope of a trademark has ripened into an actual controversy. An Article III case or

controversy will arise and the party need not risk a suit for infringement by using a trademark

before seeking a declaration of its legal rights where: (1) a trademark owner asserts rights under

a trademark "based on certain identified ongoing or planned activity of another party," and (2)

"the party contends that it has the right to engage in the accused activity without license[.]"

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) (articulating

this test for patents); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2nd Cir. 2011) (principles

applicable to declaratory judgment actions involving patents are applicable with respect to

trademarks).

Here, over the past seven years, G&B alleges it spent nearly a million dollars a year in

advertisements which used the Legal Services mark, generating significant goodwill. (TAC at ¶¶

42, 46). G&B has terminated its contractual relationship with Matrix and has been threatened

with litigation should it continue using the Legal Services mark—which it contends has been

abandoned. (*See id.* at ¶ 17). G&B intends to continue using the Legal Services mark after its

relationship terminated in January 2021.[2] (*Id.* at ¶ 76). LawCo and/or Sackett has asserted its

rights in the trademark it owns, threatening to sue G&B if it continues to use the Legal Services

---

[2] And though the court does not rely on this for the purposes of ruling on this motion, G&B has in fact continued to use the mark and has been sent a cease and desist letter. (ECF 54-1, Ex. 1, Email from Christopher Kincaide to James Astrachan).

mark, and G&B contends it has the right to continue using the Legal Services mark. This injury is fairly traceable to the threats of litigation issued by Sackett either in his individual capacity or as an agent of LawCo. And it appears that a declaratory judgment issued by this court could remedy G&B's predicament. There is therefore a case or controversy of sufficient immediacy to satisfy Article III's requirements with respect to Count I.

By contrast, though, nothing in Count II establishes an actual case or controversy. G&B pleads that the controversy there "involves . . . Sackett's claim of ownership of the . . . Advertising Services Mark" and that Sackett fraudulently obtained this mark from the U.S. Patent and Trade Office. (TAC at ¶¶ 3, 70). But G&B does not allege it uses the Advertising Services mark, it does not state how it has been harmed by Sackett's claim of ownership over this mark, or what interest, if any, it has with respect to this mark. The gravamen of Count II is that Sackett committed fraud on the U.S. Patent and Trade Office, though it is unclear how this affected any legal rights of G&B. The proposed TAC therefore fails to establish a sufficient case or controversy to permit this court to exercise subject matter jurisdiction over Count II.

And finally, the court is unable to discern any case or controversy between G&B and the proposed defendant Matrix. Count I concerns LawCo's assertion of ownership in the Legal Services mark and mentions Matrix—which does not assert rights in the mark—only incidentally. And Count II concerns Sackett's purported fraud on the U.S. Patent and Trademark Office and makes no reference to Matrix at all.

**B.    Personal Jurisdiction**

The defendants next argue that the proposed complaint is futile for the additional reason that they lack sufficient minimum contacts with the State of Maryland to permit this court to

constitutionally exercise personal jurisdiction over them. For the reasons explained below, the court agrees that it lacks personal jurisdiction over Sackett and LawCo.

To excerise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil procedure; and (2) the exercise of jurisdiction comports with the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396. Maryland courts have "consistently held" that the state's long-arm statute is "coextensive" with the limits of personal jurisdiction under the due process clause. *Id.* Thus, the statutory inquiry may merge with the constitutional inquiry. *See id.* Nonetheless, the plaintiff must identify a provision in the Maryland statute that authorizes jurisdiction. Here, G&B relies on § 6-103(b)(1), which authorizes jurisdiction over a person who, directly or by an agent: "[t]ransacts any business or performs any character of work or services in the State." *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60-61 ($th Cir. 1993). A defendant need not be present in Maryland under this provision, but the defendant's actions must culminate in purposeful activity within Maryland. *Swarey v. Stephenson*, 112 A.3d 534, 557 (Md. Ct. Spec. App. 2015).

The exercise of personal jurisdiction is consistent with the constitutional requirement of due process when a non-resident defendant has had sufficient minimum contacts with a forum state such that to require the defendant to defend its interests in that state does not offend traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). If, as here, the non-resident defendants' contacts with the forum state

are the basis of the suit, they may establish specific personal jurisdiction.[3] *See id.* The Fourth Circuit Court of Appeals has developed a three-part test for asserting specific personal jurisdiction that considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities or are directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). "[T]o justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that they 'amount to a surrogate for presence and thus render the exercise of sovereignty just.'" *Id.* at 277–78 (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997)).

The parties, in their papers, assume this court is to look to the the defendants' business dealings in the forum state to evaluate whether the court may exercise personal jurisdiction. In a typical case, that would likely be correct; but in the context of a somewhat "atypical" action for a declaratory judgment regarding the abandonment of a trademark, this assumption is worth questioning. *Mike's Train House, Inc. v. Metro. Trans. Auth.*, No. 16-cv-02031-JFM, 2016 WL 6652712, at *4-5 (D. Md. Nov. 9, 2016).[4] Though the Fourth Circuit Court of Appeals has not addressed the issue, this court finds persuasive the reasoning of the Federal Circuit in *Avocent Huntsville Corp. v. Aten International Corporation*. In that case, a declaratory judgment action to invalidate a patent, the court held that—because the nature of a declaratory judgment action for invalidation of a patent is to "clear the air of infringement charges"—the relevant contacts are a

---

[3] G&B does not assert, and the court sees no basis to conclude, that the court may exercise general jurisdiction over the defendants. Thus, the court's analysis focuses on specific jurisdiction.

[4] Unpublished opinions are cited for the soundness of their reasoning and not for precedential value.

defendant's enforcement actions, rather than its business dealings or the manufacture, use, sale, or import of a patented product. *See* 552 F.3d 1324, 1332–33 (Fed. Cir. 2008). Other judges, including some from this court, have adopted this reasoning and applied it to declaratory judgment actions involving trademarks. *See Under Armour, Inc. v. Battle Fashions, Inc.*, No. RDB-17-3223, 2019 WL 3239001, at *6 (D. Md. July 18, 2019); *Mike's Train House*, 2016 WL 6652712, at *4; *see also, e.g.*, *J.M. Smucker Co. v. Hormel Food Corp.*, --- F. Supp. 3d ----, No. 5:20-cv-1132, 2021 WL 1022452, at *5 (N.D. Ohio Mar. 16, 2021); *Ontel Prods. Corp. v. Mindscope Prods.*, 220 F. Supp. 3d 555, 560–62 (D.N.J. 2016).

Thus, in the context of an action for the invalidity of a trademark, where the trademark owner is the defendant and the claim asserted by the plaintiff relates to the wrongful restraint on the free use of the trademark, the jurisdictional inquiry properly focuses on the activities of the defendant in enforcing any rights it might have in the trademark, such as by the issuance of cease and desist letters. *See Avocent*, 552 F.3d at 1333. However, while cease and desist letters may "support an assertion of specific jurisdiction" over a trademark owner, they do not by themselves suffice to create personal jurisdiction. *Id.*; *see also J.M. Smucker Co.*, 2021 WL 1022452, at *5; *Under Armour, Inc.*, 2019 WL 3239001, at *6; *Ontel Prods.*, 220 F. Supp. 3d at 562; *Mike's Train House*, 2016 WL 6652712, at *4–5; *cf. Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (patentee does not subject itself to personal jurisdiction solely by informing a party who happens to be located in the forum of suspected infringement); *Acumen Brands, Inc. v. NHS, Inc.*, 2017 WL 1330212, at *4 (W.D. Ark. Apr. 6, 2017) (enforcement threats directed at the plaintiff but not at the forum state are insufficient to establish personal jurisdiction). This is because principles of fair play and substantial justice afford a trademark owner "sufficient latitude to inform others of [its] rights without subjecting

11

itself to jurisdiction in a foreign forum." *Avocent*, 552 F.3d at 1333. Consequently, to support

personal jurisdiction, there must be other activities, aside from cease and desist letters, directed

at the forum and related to the enforcement of the trademark rights or the defense of its validity.

*See id.* at 1334. This may include, for example, "initiating judicial or extra-judicial patent

enforcement within the forum, or entering into an exclusive license agreement or other

undertaking, which imposes enforcement obligations with a party residing or regularly doing

business in the forum." *Id.*

In this case, G&B has failed to satisfy the second element of the Fourth Circuit's test: it

has not demonstrated that its claim for a declaratory judgment arises out of the defendants'

contacts with the state of Maryland. The only allegations in the TAC giving rise to G&B's claim

for declaratory judgment regarding their rights in the Legal Services mark are based upon

litigation threats. (*See* TAC at ¶¶ 38–40; *see also* ECF 38-1, Aff. of Charles A. Gilman at ¶ 11;

ECF 54-1, Cease and Desist E-Mail). The first time Sackett threatened litigation was over the

phone, (*see* TAC at ¶ 38); G&B does not explain the circumstances of the second threat, in early

2019, stating only that "Sackett again told G&B . . . [it] would be sued for infring[ement]," (*id.* at

¶ 39); and the third threat was at a commercial shoot in 2019, after Gilman, a partner at G&B,

told Sackett that G&B was considering moving to another advertising agency, (*see id.* at ¶ 40).

There are, in sum, no allegations of enforcement activities directed at the forum state aside from

these threats of litigation, which are by themselves insufficient contacts. Accordingly, the court

lacks personal jurisdiction over the defendants.

And even if this were the typical case, Sackett and LawCo's contacts with the state of

Maryland are slight. G&B alleges that Sackett and LawCo licensed their trademarks to Matrix

for Matrix to conduct business in Maryland, (TAC at ¶¶ 9, 10), "initiated contact with G&B by

means of telephone calls placed to G&B in the State of Maryland for purposes of soliciting"

G&B to engage its advertising services, (*id.* at ¶ 11), contracted with G&B, "which is located in

the State of Maryland," (*id.*), "solicited business in the State of Maryland," (*id.*), and visited the

State of Maryland for the purpose of conducting business with G&B, (*id.*). Thus, the complaint

alleges, this court has personal jurisdiction over LawCo because it "regularly transacts business

in the State of Maryland." (*Id.* at ¶ 13). But there are no allegations that LawCo maintains an

office (let alone a principal place of business) in Maryland; that LawCo maintains a registered

agent in Maryland; that LawCo or Sackett own any property in the state; that LawCo or Sackett

solicited G&B's business in person in the state; or, aside from the vague and conclusory

allegation that LawCo and Sackett "solicited business in the State," that they engaged in

significant business in the state. It would not comport with due process for this court to exercise

personal jurisdiction over these defendants merely because they licensed their trademarks to a

third party who in turn conducted business in the state, visited the state to conduct unspecified

business, and solicited G&B's advertising business over the phone.[5] Such actions are not a

"surrogate for presence" and are therefore not capable of "render[ing] the exercise of sovereignty

just." *Consulting Eng'rs Corp.*, 561 F.3d at 277–78 (internal quotation marks omitted).

This court and others have at times "declined to deny leave to amend on futility grounds

for lack of personal jurisdiction." *Pridgen v. Appen Butler Hill, Inc.*, No. JKB-18-61, 2019 WL

1048950, at *3 (D. Md. Mar. 5, 2019) (and citing cases). But the cases cited in *Pridgen* are

distinguishable: for example, in *Williams v. Romarm, S.A.*, the plaintiffs were seeking leave to

---

[5] G&B also alleges that the State of Maryland has a judgment against LawCo, (TAC at ¶ 13), that
the defendants have asked G&B to solicit clients for LawCo's legal business, (*id.* at ¶ 14), and
that one of LawCo's attorneys is admitted to practice law in Maryland, (*id.* at ¶ 15). It is not clear
how these allegations are relevant to the court's specific jurisdiction analysis, which must focus
on the defendants' contacts giving rise to the claims asserted in the complaint.

amend their original complaint after providing substantial new jurisdictional alegations, *see* No. TDC-14-3124, 2016 WL 4548102, at *1 (D. Md. Feb. 19, 2016); and in *Speedsportsz, LLC v. Menzel Motor Sports*, the parties had not yet fully briefed a motion to dismiss, *see* No. 07-CV-624-TCK-SAJ, 2008WL 4632726, at *2 (N.D. Okla. Oct. 17, 2008). In this case, by contrast, G&B is on its fourth complaint, the parties have fully briefed two motions to dismiss, and the defendants have asserted lack of personal jurisdiction as a basis for dismissal in their motion to dismiss the first amended complaint (ECF 22), their motion to dismiss the second amended complaint (ECF 36), and in their opposition to G&B's motion for leave to file a third amended complaint (ECF 54). G&B has thus had more than adequate notice of the potential jurisdictional issues with its complaint and has had numerous opportunities to amend the complaint already. Further, in its prior ruling addressing the defendants' motion to dismiss the amended complaint, the court stated that "[w]hen and if the defendants file a motion to dismiss the [second amended complaint], the court will address the legal sufficiency of the [second amended complaint] at that time." (ECF 33 at 8). That time has come and it is clear that this court lacks sufficient minimum contacts over the defendants to exercise personal jurisdiction over them with respect to G&B's declaratory judgment action.

***

In sum, the court lacks subject matter jurisdiction over Count II and over G&B's claims against Matrix, to the extent any are actually asserted. The court therefore will deny G&B's motion for leave to file a third amended complaint.[6] Had the court granted the motion, the TAC

---

[6] In its opposition, the defendants ask the court to sanction G&B for what they call vexatious litigation tactics. This request, which is based on an assumption of bad faith and the fact that the docket contains more than fifty entries prior to the filing of an answer, lacks merit and will be denied.

would have become the operative complaint in this litigation and the pending motion to dismiss

the second amended complaint (ECF 36) would have become moot. *See Fawzy v. Wauquiez*

*Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017). Since the motion has been denied, the second

amended complaint remains the operative complaint and the court will next address the motion

to dismiss that complaint.

## II.    Motion to Dismiss the Second Amended Complaint

Unlike the proposed TAC, the second amended complaint ("SAC") contains just a single

count, seeking declaratory relief as to the trademarks registered to Sackett and LawCo. As

explained previously, the declaratory judgment action arose as a result of Sackett's litigation

threats, which are also set forth in the SAC. (*See* SAC at ¶¶ 26, 31). For the same reasons

explained above, these threats of enforcement, by themselves, are insufficient contacts to justify

this court's exercise of personal jurisdiction over the defendants. *See Avocent*, 552 F.3d at 1332–

33. The defendants' motion to dismiss will therefore be granted and the SAC will be

dismissed.[7],[8]

## III.   Motion for Jurisdictional Discovery

---

[7] G&B has also moved for leave to file a sureeply to address a footnote in the defendants' reply
in support of their motion to dismiss the second amended complaint. (ECF 44). Specifically,
G&B seeks to respond to the disclosure of the existence of a parallel action in Florida state court
filed by Matrix against G&B, and to address an argument about licensee estoppel raised in the
defendants' reply brief. In light of the court's rulings, these arguments are moot. Even if, as
G&B argues, the parallel action in Florida state court can be characterized as a trademark action
in contract garb, it would tend to demonstrate that the defendants have directed their enforcement
activities at Florida rather than at Maryland. And because this court did not rely on the
defendants' arguments about licensee estoppel, it need not address G&B's counterarguments.
The motion for leave to file a surreply will therefore be denied.

[8] The defendants moved to dismiss or, in the alternative, for transfer of this case to the Southern
District of Florida. G&B opposed transfer and suggested that, if the case were transferred, it
should go to the District of Columbia. In light of G&B's opposition and disagreement about
proper venue, the court will dismiss rather than transfer the case.

After the defendants filed their motion to dismiss the second amended complaint, G&B

moved for leave to conduct limited jurisdictional discovery. G&B's theory is that "[d]iscovery

regarding Sackett's ownership interests and exactly how G&B's funds were used"—when they

were allegedly misappropriated by Sackett to pay his personal taxes—"would enable the Court to

resolve the question whether the corporate veils of Matrix and/or LawCo should be pierced to

establish personal jurisdiction over Sackett." (ECF 39 at ¶ 6). Though limited jurisdictional

discovery "may be warranted to explore jurisdictional facts in some cases," the Fourth Circuit

has held that such discovery is not warranted where was "ample opportunity to take discovery

and the pleadings contain[] no specific facts that could establish the requisite contacts with

Maryland." *Mylan Labs.*, 2 F.3d at 64. No discovery has commenced in this case, but G&B's

proposed TAC does not even allege that Matrix or LawCo took any enforcement action with

respect to their trademarks. Instead, it seeks discovery on the issue of piercing the corporate veil,

which is irrelevant to this court's personal jurisdiction analysis. *See Avocent*, 552 F.3d at 1333.

Accordingly, the motion for jurisdictional discovery will be denied.[9]


### CONCLUSION

For these reasons, the court will deny the plaintiff's motion for leave to file a third

amended complaint (ECF 50), grant the defendants' motion to dismiss the plaintiff's second

amended complaint ("SAC") (ECF 36), deny the plaintiff's motion for jurisdictional discovery

---

[9] The defendants have filed a motion for leave to file a surreply with respect to G&B's motion for jurisdictional discovery. (ECF 46). The proposed surreply would address several arguments appearing in G&B's reply which go to the issue of whether the court could pierce the corporate veil. As explained herein, that issue is not dispositive. Accordingly, the court will deny the motion for leave to file a surreply.

(ECF 39), and deny the motions for leave to file surreplies (ECF 44; ECF 46). A separate Order

follows.

   9/27/21                                               /s/                         
Date                                                     Catherine C. Blake
                                                     United States District Judge